RANGELEY LAND COMPANY ET AL

*vs.*

EDWARD E. FARNSWORTH ET ALS, State Highway Commissioners.

Franklin.     Opinion, July 19, 1934.

*Bradley, Linnell, Nulty & Brown,* for plaintiff.
*Clyde R. Chapman,* Attorney General,
*Sanford L. Fogg,* Deputy Attorney General, for respondents.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

PATTANGALL, C. J.   On report. Bill in equity asking for injunction against defendants in their capacity as State Highway Commissioners to prevent them from proceeding with the construction of a state aid highway on and across land of plaintiffs.

The agreed facts are as follows. The Rangeley Land Company and the other plaintiffs named in the bill are owners of real estate in Franklin County, particularly in Rangeley Plantation. The defendants were, on the date of the filing of the bill, members of the State Highway Commission.

On March 7, 1934, the defendants, in their capacity as members

of the State Highway Commission, determined to lay out and establish a new highway as a state aid highway, beginning at Houghton, in the Town of Byron, in the County of Oxford, and extending in a northerly direction into and through Franklin County to the state highway at Oquossoc in that County, in part across land owned by the plaintiffs; and on March 14, 1934, gave notice of the taking of land of plaintiffs for that purpose.

Prior to the action of the State Highway Commission or their agents in purporting to take plaintiffs' land, no way, either public or private, existed along the line described in the bill. Neither the interested towns, plantations, nor the County Commissioners of Franklin County have raised or appropriated money for the construction of the proposed highway, on account of which state aid can be paid; nor have any of them applied for state aid for any way along this route. Neither the municipal officers of such towns or plantations nor the County Commissioners of Franklin County have designated the proposed highway as best suited to serve outlying communities, to connect adjoining towns and villages, or to facilitate travel in reaching markets, railroad connections and state roads, giving consideration to cost as well as distance and volume of travel. Neither the municipal officers nor County Commissioners of Franklin County have presented to the State Highway Commission for its approval any description of any such way.

No town meeting has been held by any of the towns in Franklin County through which said proposed way would pass to determine the question of its desirability. The question of whether or not a necessity or public exigency exists for such a highway has not been determined by hearing. The State Highway Commission, on its own motion, has laid out and attempted to open the proposed highway, wholly without initiative for such action on the part of any interested town, plantation or group thereof, or by the County, Commissioners of Franklin County.

The maintenance cost thereof would be borne in part by Rangley Plantation, if said road were constructed according to the provisions of Chapter 28, R. S. 1930. The plaintiffs are substantial taxpayers in Rangeley Plantation and in other towns and plantations in Franklin County, and if maintenance charges are assessed against the towns and plantations in that county, they would be

compelled to bear their share of the necessary resulting increase in taxes.

It is stipulated that if the Court should find the contentions of the plaintiffs to be correct, namely, that the defendants under Chapter 28, R. S. 1930, have acted in an unauthorized manner, the Court shall cause to be issued a permanent injunction restraining them and their successors in office from laying out and constructing the proposed highway in Franklin County, and particularly in Rangeley Plantation, unless and until proper steps have been taken by the interested towns, municipal officers or County Commissioners by appropriating funds for the construction thereof, on account of which state aid shall be given, applying for the same, and otherwise carrying out the provisions of Chapter 28. If the Court shall find the contentions of the defendants to be correct, namely, that the State Highway Commission has acted as authorized by Chapter 28, it shall dismiss the bill.

The definite issue presented is whether or not the State Highway Commission is authorized to construct a state aid highway on its own motion without initiative action on the part of any interested town, plantation or group thereof, by their municipal officers, or by county commissioners. We think not.

Defendants rely upon the provisions of Secs. 8 and 14, Chap. 28, R. S. 1930. Sec. 8 provides that "the commission shall lay out, construct and maintain a system of state highways and state aid highways." Sec. 14 provides that "the Commission may lay out, establish and open a new highway as a state or state aid highway." Taken by themselves, these provisions would seem to authorize defendants' position; but it is necessary to examine and analyze with some care Chapter 28 in its entirety in order to determine the intent of the legislature in regard to the subjects treated therein.

Highways are divided by Sec. 5 of that chapter into three classes — state highways, meaning a system of connected main highways throughout the state; state aid highways, meaning such highways not included in the system of state highways as shall be thoroughfares between principal settlements, or between settlements and their market or shipping point and so far as practicable feeders to the state highway; and third class highways, which include all highways not within either of the other classes.

The expense of construction of state highways is borne wholly by the state (Sec. 8), excepting that under certain circumstances a town may voluntarily, with the permission of the State Highway Commission, join in the cost of constructing a portion of designated state highway within its boundaries (Sec. 23). They are maintained under the direction and control of the Commission at the joint expense of the state and the towns in which they are located (Sec. 9).

Municipal officers are authorized to designate such practicable systems of public ways within their jurisdiction as will best serve outlying communities, connect adjoining towns and villages, and facilitate travel in reaching markets, railroad connections and state roads, due consideration being given to cost as well as distance and volume of travel. A suitable description of each such way shall be presented to the Commission for its approval and, upon being approved and accepted by the Commission, shall be established and known as a state aid highway. Twenty or more voters in any town, by written petition presented within thirty days after the description of such way has been filed with the Commission, shall have the right to be heard on the acceptance thereof and the Commission may accept or reject any part or all of such way and impose terms in respect thereto (Sec. 17).

The expense of construction of state aid highways is borne jointly by the state and municipalities (Secs. 19 and 21), and they are maintained under the direction and control of the Commission at the joint expense of state and towns (Sec. 18).

Towns desiring state aid for building or permanently improving state aid highways may raise and appropriate money for that purpose (Sec. 19).

Between July 15 and August 15 of each year, municipal officers may prepare and file with the Commission suggestions for improvement of state aid highways, during the year following, and before February 20th the Commissioners are directed to report on these recommendations in order that the towns may act upon them in their annual meetings, such action including the appropriation of necessary funds (Sec. 20).

These various enactments are all indicative of a plan which places upon the municipalities desiring state aid in construction of

state aid highways the burden of initiating the proposition and submitting it to the Highway Commission for approval. Towns can not compel the state to take part in the joint enterprise nor can the state compel towns to do so, although such would be the effect if the clauses quoted from Sections 8 and 14 are given the force claimed by defendants.

These sections can only be reconciled with the remaining provisions of Chapter 28 on the assumption that the authority given to the Commission to "lay out, construct and maintain state aid highways" and "to lay out, establish and open a new highway as a state aid highway" becomes effective only after the preliminary action called for in the other sections quoted has been exercised by the interested municipalities.

Our view that such was the intent of the legislature is strengthened by the fact that Sec. 8 provides that before beginning the construction of a state highway, after reasonable notice by publication, all parties interested shall be given a hearing before the Commission, while no provision is made for such hearing with regard to a state aid highway. If this section and Sec. 14 are taken literally, unmodified by the following sections, it would appear that while the Commission could not construct a state highway to be built entirely from state funds without a public hearing at which towns interested in the maintenance of such a way could be heard, it could construct a state aid highway in part at the expense of the towns without such a hearing.

The somewhat elaborate provisions relating to the necessary action on the part of municipal officers and towns and the right of twenty taxpayers to intervene and be heard before a state aid highway should be established would amount to nothing if they could all be dispensed with by summary and arbitrary action of the Commission.

The fair consideration of whether or not a proposed state highway would "best serve outlying communities, connect adjoining towns and villages and facilitate travel in reaching markets, railroad connections and state roads, due consideration being given to cost as well as distance and volume of travel," would be impossible without a hearing and should not be subject to arbitrary decision.

It is not contemplated that the state shall bear the entire expense of construction of a state aid highway. In order to procure state aid the town must make an appropriation for such construction. Certainly it could not be contended that the Commission could compel a town to make such an appropriation. How then could it possibly proceed to construct a state aid highway, in opposition to the wishes of the community served by it?

If the Commission were to be given authority to construct state aid highways on its own initiative, it would be necessary to arrange some method of assessing a portion of the expense against the interested towns. The statute provides none. The act of a municipality in making an appropriation for the construction of a state aid highway must be voluntary. No such highway can be constructed without local consent and cooperation, and that consent and cooperation must be procured before state authorities can act.

In the orderly proceedings provided, the municipal officers propose a plan, the Commission may reject or accept it in part or in whole or return it with modifications. Unless it is rejected, the town at its annual meeting acts upon it. The town may then reject it. If it does so, that ends the matter. If it approves, it must make an appropriation, the amount of which is fixed by statute. The Commission then, after notice and hearing, opportunity having been given for all interested parties to be heard and for petitioning voters to present their views, renders its final decision. After these requirements are complied with, it may exercise its power by virtue of the provisions of Secs. 8 and 14 to "lay out, establish and construct" a state aid highway. It can not do so until and unless the necessary preliminary steps are taken.

*Bill sustained.*
*Injunction to issue as prayed*
*for and stipulated.*